UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                                                               Case No. 05-11603-WRS
                                                                                                    Chapter 13
JOHN ROCCO FOWLER
CARMEN J. FOWLER,

     Debtors

JOHN ROCCO FOWLER JR.
and CARMEN J. FOWLER,

     Plaintiffs                                                              Adv. Pro. No. 05-1110-WRS

  v.

CHEETAH MOTORSPORTS,
CAREY EDEN, CSI ACCOUNTING
SERVICES LLC, and JAMEY VIBBERT,

     Defendants

## MEMORANDUM DECISION

This Adversary Proceeding came before the Court for hearing on June 20, 2006. Plaintiffs John Fowler, Jr., and Carmen J. Fowler were present in person and by counsel Donna C. Crooks. Defendants Carey Eden and Cheetah Motorsports were present by Carey Eden and by their counsel William C. Elliott. Jamey Vibbert was present, pro se. For the reasons set forth below, the Court enters judgment in favor of Plaintiffs John Fowler, Jr., and Carmen J. Fowler and against Defendants Jamey Vibbert and CSI Accounting, Inc., in the amount of $3,460.00, plus the Plaintiffs' attorney's fees. As the Court has found that Carey Eden did not violate the automatic stay, the complaint against Eden and Cheetah Motorsports is DISMISSED WITH PREJUDICE.

## I. FINDINGS OF FACT

The Plaintiffs filed a petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Code on August 5, 2005. At that time, they filed schedules and a Chapter 13 Plan, contending that they owned a 1999 BMW automobile. The Debtors reported that the BMW was subject to a security interest in favor of CSI Accounting, Inc., to secure an indebtedness in the amount of $4,691.08. The Debtors' plan proposed to pay the secured indebtedness over the life of the plan. The Court's records indicate that CSI Accounting, Inc., was sent notices regarding this case at 1026 Fortner St., Dothan, Alabama.

The sequence of events by which the Fowlers found themselves in possession of the BMW is somewhat confusing. The testimony at trial established that the Fowlers, Eden and Vibbert knew each other and that at one time, the Fowlers socialized with Eden and his wife, which accounts for the informality of this transaction.

In February of 2005, John Fowler approached Eden about the purchase of the BMW automobile. They arrived at a price of $9,500.00. (Plaintiffs' Exhibit 11). The Fowlers attempted to obtain financing but were unable do so, at least from conventional sources. Eden permitted the Fowlers to remain in possession of the BMW while they attempted to secure financing. After the Fowlers exhausted their sources of conventional financing, Eden put them in contact with Defendant Jamey Vibbert to see if he could finance the purchase. Vibbert owned two businesses, CSI Accounting, and CSI Auto Sales, which had separate places of business in Dothan, Alabama. Vibbert spent most of his time at CSI Accounting and his brother managed CSI Auto Sales.

2

Vibbert agreed to lend the Fowlers $4,264.00 against the automobile and $2,607.00 against an anticipated tax refund. (Plaintiffs Exhibits 9(a) and 9(d)). These two loans were evidenced by promissory notes dated March 28, 2005. In addition, the Fowlers owned a used Honda Accord which was sold by Vibbert at an auction for $1,300.00, with the proceeds applied to the purchase of the BMW. In the meantime, it was learned that the tax refund which was expected by the Fowlers was not to materialize, for reasons which were not made clear at trial. What was clear was that the Fowlers were still considerably short of the $9,500.00 needed to fund the purchase of the BMW. Also of interest, the Fowlers made four monthly payments, in the amount of $390.00 each, to CSI Auto Sales, Inc., notwithstanding the fact that the promissory note in question called for only a single payment, due one year after execution of the promissory note, On March 28, 2005, CSI Auto Sales issued a check in the amount of $5,564.00 to Cheetah Motor Sports, representing the proceeds of the $4,264.00 promissory note, plus the $1,300.00 proceeds from the sale of the Honda. At this time, the Fowlers were still short $3,936.00.

Vibbert testified that he attempted to contact the Fowlers repeatedly to resolve the situation, but that they would not talk to him. The Fowlers denied avoiding Vibbert, but it is clear that the parties were involved in a rapidly deteriorating situation.

Eden held physical possession of a Certificate of Title to the BMW which had been issued by the Alabama Department of Revenue to Penny P. Witcher, who apparently was a former owner. The back of the Certficate of Title indicates that title had been assigned three times, the last time to Cheetah Motorsports. Assuming that this paperwork is in order, it would appear that Cheetah Motorsports held title to the BMW. Eden testified at trial that he intended to

hold the Certificate of Title until he was paid in full for the purchase price. The evidence was clear that Eden had no intentions of financing the purchase by the Fowlers.

By the time the Fowlers filed their petition in bankruptcy, the situation was totally out of hand. The respective positions of Eden, Vibbert and the Fowlers was not at all clear. In Eden's view, he was still owed $3,936.00 on the purchase of the BMW. Vibbert knew that Eden was looking to him for that amount of money and was frustrated that the Fowlers had not been more forthright in dealing with this situation. Interestingly, the Fowlers listed the BMW on their schedules with a value of $13,500.00, yet they knew that they had only paid $1,300.00 down and $4,264.00 on the promissory note to CSI Accounting. There is nothing in the Fowler's plan or schedules which purports to deal with this problem.

On September 7, 2005, a little more than one month after the date of the petition, Vibbert had the BMW repossessed. The repo man, who was not identified at trial by name, entered the Fowlers' property, shoved John Fowler out of the way and drove off with the BMW, using a key which was in his possession.[1] The repo man delivered the BMW to CSI Auto Sales, which in turn delivered the vehicle to Cheetah Motorsports. The Fowlers complained to Vibbert, contending that they were in bankruptcy and that the BMW should not have been taken. Donna Crooks, the Fowlers' lawyer, also telephoned Vibbert and demanded return of the vehicle, citing the pendency of the Fowlers' bankruptcy case and advising him that he was in violation of the automatic stay. Vibbert refused to return the vehicle until he spoke with his lawyer.

---

[1] The Plaintiffs argue that the only possible means by which the repo man could have obtained the key was by getting it from Eden. From this, the Plaintiffs would have the Court infer that, at a minimum, Eden had prior knowledge of the repossession and perhaps even the bankruptcy filing. The Court is not willing to draw this inference, notwithstanding the fact that it never was explained how the repo man came to have a key to the Fowler's BMW.

4

In the meantime, Eden found that the BMW had been returned to his lot, although he did not yet know about the high drama which had taken place. One may have assumed that either Vibbert or Fowler had returned the BMW. Eden then telephoned a customer who he knew was interested in a used BMW of the series and vintage of the vehicle in question. As luck would have it, the customer promptly came to Cheetah's lot and bought the BMW on the spot, cutting off any opportunity to return the vehicle to the Fowlers. The Court finds from the evidence adduced at trial that Eden did not know of the Fowlers' bankruptcy at the time he sold the BMW. Vibbert was not able to meet with his lawyer until the day after the repossession, when he learned that Crooks had not been bluffing about the automatic stay. Vibbert then telephoned Eden and learned that the BMW had been sold.

## II. CONCLUSIONS OF LAW

This Court has jurisdiction to hear this Adversary Proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (G), (K) and (O).

The Plaintiffs seek damages contending that the Defendants have willfully violated the automatic stay. "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h).[2] Section 362(a) provides, in part, as follows:

---

[2] Section 362 of the Bankruptcy Code was amended effective October 17, 2005, by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8)(BAPCPA). As the Plaintiffs Chapter 13 case was filed prior to the effective date, the BAPCPA amendments do not apply here. All references to the Bankruptcy Code here will be made to the Code as it stood prior to the BAPCPA amendments.

5

> Except as provided in subsection (b) of this section, a petition filed under section 301 . . . operates as a stay, applicable to all entities, of–
>
> * * *
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> * * *
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

The Defendants argue that there was no violation of the automatic stay because the Debtors did not own the BMW. While the Debtors did not have clear title to the automobile, the following facts establish that they did have an interest in it: (1) it was intended by all parties that the Fowlers were to purchase the automobile; (2) a bill of sale was executed in favor of the Fowlers; (3) two promissory notes were executed in furtherance of the purchase; (4) four monthly payments had been made by the Fowlers; (5) the Fowlers had possession of the BMW. In a case involving a mobile home, the Court found that a debtor had a sufficient property interest to maintain an action such as this, notwithstanding the fact that she did not have clear title. Smith v. Homes Today, Inc., (In re: Smith), 296 B.R. 46, 53-54 (Bankr. M.D. Ala. 2003). The Court concludes that the Fowlers had a sufficient property interest in the BMW to maintain this action.

The Court has determined that Defendant Carey Eden did not know of the Fowlers bankruptcy proceeding and did not know of Vibbert's plan to take back the automobile. Eden

6

testified that he did not know how the BMW had come to be returned to his lot, however, at that time he held title to the vehicle and knew that he had not been paid in full for its purchase. Under these facts, it was reasonable for Eden to sell the vehicle. The Debtors' complaint, insofar as it relates to Carey Eden and Cheetah Motorsports is DISMISSED WITH PREJUDICE.

In contrast, Vibbert knew of the Fowlers' bankruptcy filing and nevertheless repossessed the automobile. His actions were a willful violation of the automatic stay. Having determined that a willful violation has taken place, the Court will next consider an award of damages.

The Court acknowledges that the purchase of the BMW was a poorly defined if not ragged transaction. To be sure, the Debtors could have done a better job clarifying the situation in their Chapter 13 plan. Nevertheless, Vibbert could have done any number of things to set this situation right. First, he could have filed a motion for relief from the automatic stay. See, 11 U.S.C. § 362(d). Second, he could have filed an objection to the Chapter 13 Plan. See, 11 U.S.C. § 1325(a)(5). Third, he could have filed an Adversary Proceeding to determine the interests of the various parties in the BMW. Vibbert had a forum available to him to address his concerns, but he chose instead to trespass on the Fowlers' property and violate the automatic stay.

As for damages, the Court first will award the amount of the proceeds from the sale of the Honda, which was $1,300.00. Second, the Court will award a return of the four $390.00 payments made to Vibbert, which was $1,560.00. Third, the Court will award $500.00 which was the cost of alternate transportation. Fourth, the Court will award an additional $1,000.00 in punitive damages, for total damages in the amount of $3,460.00. Finally, the Court will award attorney's fees. The Debtors' lawyer Donna Crooks shall, within 10 days, file an affidavit

7

specifying her time and charges for her fees in bringing this adversary proceeding. Defendant Jimmy Vibbert may file a response within 10 days of service.

### III. CONCLUSION

For the reasons set forth above, judgment is entered in favor of Plaintiffs John Fowler, Jr., and Carmen J. Fowler and against Defendants Jamey Vibbert and CSI Accounting, Inc., in the amount of $3,460.00, plus attorney's fees which shall be determined as set forth above. The Plaintiffs' complaint, insofar as it seeks relief from Carey Eden and Cheetah Motorsports is DISMISSED WITH PREJUDICE. The Court will enter orders consistent with this Memorandum.

Done this 7th day of July, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Donna C. Crooks, Attorney for Plaintiffs
   William C. Elliott, Attorney for Eden and Cheetah
   Jamey Vibbert, Defendant
   CSI Accounting Services LLC, Defendant

8